Maryam Maleki (SBN 283189)
HACKLER FLYNN & ASSOCIATES, APC
388 Cordova Street, Suite 100C
Pasadena, CA 91101
Telephone: (323) 247-7030
Facsimile:: (323) 319-9242
Email: Maryam@HacklerFlynnLaw.com

Attorneys for Plaintiffs ROBERT RINGER and PATRICIA RINGER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

ROBERT RINGER, an individual; PATRICIA RINGER, an individual,

Plaintiffs,

v.

PALO ALTO NETWORKS, INC., a Delaware corporation; and NIKESH ARORA, an individual,

Defendants.

Case No. ____________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**(1) DECLARATORY RELIEF (NON-SIGNATORY RIGHTS);**

**(2) DECLARATORY RELIEF (FEDERAL OWNERSHIP);**

**(3) PROVISIONAL RELIEF;**

**(4) VIOLATION OF 17 U.S.C. § 1202;**

**(5) DECLARATORY RELIEF (AUTHORSHIP);**

**(6) VIOLATION OF CAL. PENAL CODE § 502;**

**(7) INTRUSION UPON SECLUSION;**

**(8) MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836);**

**(9) MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE § 3426);**

**(10) VIOLATION OF 18 U.S.C. § 2701;**

**(11) INVASION OF PRIVACY;**

**(12) VIOLATION OF 18 U.S.C. § 1030;**

**(13) CONVERSION;**

**(14) DECLARATORY RELIEF (LICENSE); AND**

**(15) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

## I. INTRODUCTION

This action asks the Court to decide whether a private arbitrator may determine who owns copyrights and inventions in software works, including works conceived by a person who never signed any agreement with Defendant Palo Alto Networks, Inc. ("PAN") and never agreed to arbitrate anything.

PAN's Demand for Arbitration before JAMS (Ref. No. 5330000327) seeks a declaration that PAN owns copyrights and patent rights in the works and an order compelling Plaintiff Robert Ringer to assign "all rights, title, and interest" in them. Federal law supplies the rules of ownership. Copyright vests initially in the author, 17 U.S.C. § 201(a), unless the work is a "work made for hire" as defined in 17 U.S.C. § 101. Rights in an invention belong initially to the inventor. A transfer of either requires a writing signed by the owner. 17 U.S.C. § 204(a); 35 U.S.C. § 261. Mr. Ringer's works were written on his own time, on his own equipment, outside his job

as a salesperson demonstrating PAN's products, and were published to the world as open-source software under public licenses. Whether PAN can claim authorship of them is a question of authorship and work-for-hire status under the Copyright Act, and nothing else.

Plaintiff Patricia Ringer, who has never been employed by PAN and is a stranger to PAN's agreements, is the sole owner of proprietary software that is also at issue. No arbitrator can adjudicate the rights of non-signatories. And because PAN's ownership claims arise under the Copyright Act and the Patent Act, they belong in this Court under 28 U.S.C. § 1338(a).

PAN has also continued, since terminating Mr. Ringer on July 2, 2025, to use his works while removing his name and attributing them to its Unit 42 team and had retained access to his private systems. PAN's Chief Executive Officer, Defendant Nikesh Arora, personally made that attribution and did not correct it after Mr. Ringer notified him in writing on July 1, 2025 that statements made under his name credited the work to internal teams without attribution to Mr. Ringer. Plaintiffs seek relief for that conduct as well.

## II. JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

### Jurisdiction

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over Count Four, which arises under 17 U.S.C. § 1202(a) and (b), and over Counts One, Two, and Five, which turn on authorship and work-for-hire status under 17 U.S.C. §§ 101 and 201, transfer under 17 U.S.C. § 204 and 35 U.S.C. § 261, and inventorship. A dispute that turns on whether software was created independently or as a work made for hire is an ownership dispute that arises under the Copyright Act. Plaintiffs' ownership claims rest solely on the Copyright Act; they do not seek construction of any contract. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 over

Count Eight (Defend Trade Secrets Act, 18 U.S.C. § 1836), Count Ten (Stored Communications Act, 18 U.S.C. §§ 2701 and 2707), and Count Twelve (Computer Fraud and Abuse Act, 18 U.S.C. § 1030). The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state-law claims because they form part of the same case or controversy.

2. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, authorizes the declaratory relief sought. An actual controversy exists: PAN seeks a declaration that it owns the works and an order compelling their assignment, and Plaintiffs dispute both PAN's ownership claim and the arbitrator's authority to decide it.

3. The Court has personal jurisdiction over PAN, which maintains its principal place of business in this District. The Court has personal jurisdiction over Defendant Nikesh Arora, who resides in this District, serves as PAN's Chief Executive Officer at its principal place of business in this District and who made or directed the statements and conduct alleged in Count Four in and from this District.

**Venue**

4. Venue is proper under 28 U.S.C. § 1391(b) because PAN and Defendant Nikesh Arora both reside in this District, all Defendants reside in California, and a substantial part of the events giving rise to the claims occurred here. 28 U.S.C. § 1391(b)(1), (2). Divisional Assignment: This action includes intellectual property claims, which the Court's Assignment Plan (General Order No. 44) designates as a district-wide case category under Civil L.R. 3-2(c). To the extent divisional assignment applies, this action arises in Santa Clara County within the meaning of Civil L.R. 3-2(c), because a substantial part of the events or omissions giving rise to the claims, including PAN's misattribution of the Works and its decisions concerning Mr. Ringer, occurred there and PAN maintains its principal place of business there. Assignment to the San Jose Division is therefore proper under Civil L.R. 3-2(e).

/ / /

## III. PARTIES

5. Plaintiff Robert Ringer is an individual currently residing in Hutto, Texas. During his employment he regularly worked in California, at PAN's offices in Santa Clara and San Francisco, for substantial periods. PAN employed him from April 1, 2019 through July 2, 2025. His offer letter hired him as a Systems Engineer compensated under PAN's Sales Compensation Plan; his later title was Enterprise Principal Architect. His role was customer-facing technical sales support, not product development or research and development.

6. Plaintiff Patricia Ringer is an individual residing in California. She has never been employed by PAN and has never signed any agreement with PAN.

7. Defendant Palo Alto Networks, Inc. is a Delaware corporation with its principal place of business at 3000 Tannery Way, Santa Clara, California 95054. Defendant Nikesh Arora is an individual residing in Atherton, San Mateo County, California, within this District, and is PAN's Chief Executive Officer. Mr. Arora is named as a defendant in Count Four and in Count Fifteen (as to its misattribution predicate), based on his own participation in, authorization of, and direction of the conduct alleged in those counts. PAN and Mr. Arora are referred to together as "Defendants."

8. Non-party TechRinger LLC is a Texas limited liability company formed in 2022 and wholly owned by Mr. Ringer. It has not conducted business. "TechRinger" is also the name of Mr. Ringer's GitHub account and personal email domain. TechRinger LLC is not a party to any agreement with PAN.

## IV. FACTUAL ALLEGATIONS

### A. The Arbitration Agreement

9. PAN contends Mr. Ringer accepted an Arbitration Agreement by clicking "I Agree" in PAN's Workday system on March 21, 2019. The Arbitration Agreement

incorporates the JAMS Employment Arbitration Rules. It provides that the arbitrator "must follow applicable law"; that "[d]isputes between the parties that may not be subject to predispute arbitration agreement as provided by . . . an Act of Congress . . . are excluded from the coverage of this Agreement"; and that "[e]ither you or the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy" where an award "may be rendered ineffectual without such relief."

10. This action does not concern, and Plaintiffs do not ask the Court to construe, any agreement between Mr. Ringer and PAN. Ownership of a copyrightable work vests by operation of the Copyright Act in its author, and PAN can displace that default only by proving a work made for hire or a signed assignment that actually reaches these Works. 17 U.S.C. §§ 201(a), 204(a). No agreement does so. Any invention-assignment agreement between Mr. Ringer and PAN reaches only inventions related to his employment, which was to sell and demonstrate PAN's products. The Works were not related to that employment. PAN's contrary position—that the Works are covered because artificial intelligence can be used in cybersecurity—proves too much: on that reasoning PAN would own essentially all artificial-intelligence work by any of its employees, which the agreement cannot mean. Because no agreement reaches the Works, their ownership is governed solely by the Copyright Act, and this is a dispute about authorship and ownership under federal law, not a contractual dispute.

11. Patricia Ringer and TechRinger LLC are not parties to any agreement with PAN, including the Arbitration Agreement.

### B. **The Works**

12. The works at issue are (a) AutoPWN9000, including its AI attack framework visualization, and SaaS-Squash, which Mr. Ringer published as open-

source software (the “Open-Source Projects”); and (b) proprietary software owned by Patricia Ringer, known as the Self-Correcting AI Workflow Generation System or Dynamic Tasking System (the “Family Software”) (collectively, the “Works”). The Family Software belongs solely to Patricia Ringer, who has never been employed by PAN or signed any agreement with PAN. The original code, the AI attack framework and its visualization, integration code, diagrams, documentation, and the AutoPWN9000 name and logo materials that Mr. Ringer wrote or created for the Open-Source Projects are the “Ringer Contributions.” The Ringer Contributions do not include third-party tools or components bundled in the Open-Source Projects, or the GC2-sheet code on which SaaS-Squash is built, each of which belongs to its own authors under its own license.

13. PAN’s July 2, 2025 letter also lists “ArsenalX.” ArsenalX is a name that appears on an AI-generated mock-up web page; it does not exist as software. AutoPWN9000 began in or about November 2022 as Mr. Ringer’s personal learning collection of publicly available security tools, assembled while he studied for professional certifications, and named by his son. It drew on GitHub and other public resources. No PAN employee helped Mr. Ringer develop, improve, or test AutoPWN9000, and he did not develop, improve, or test it during PAN working hours. SaaS-Squash is built on a publicly available open-source repository, which Mr. Ringer used to learn the Go (Golang) programming language; he used SaaS-Squash outside work as a learning tool, not as a PAN product. He worked on both on his own time, using his own equipment, and released them publicly. They incorporate components licensed from third parties under their own license terms. PAN does not own them. On or about March 22, 2024, Mr. Ringer proposed AI-based offensive security research and development to his manager, Justin Douglas, and asked for $5,000 and time to explore AI, work that was outside his sales duties. Mr. Douglas

declined to provide funding or time because Mr. Ringer was in sales and told him he could do it himself if he wanted. Mr. Ringer did so on his own time and at his own expense, and none of the work resides on PAN equipment or software.

14. SaaS-Squash is a derivative of GC2-sheet, an open-source project licensed under the GNU General Public License v3.0, and has been publicly available on GitHub. Any rights in it are subject to the rights of the third-party authors and their license.

15. Patricia Ringer is the sole owner and developer of the Family Software; she wrote it. Others contributed informally to ideas, but no one other than Patricia Ringer owns the Family Software. Mr. Ringer does not own it and never has. Acting as a point of contact on his mother's behalf, Mr. Ringer was originally named as inventor on U.S. Provisional Patent Application No. 63/808,296, for which the patent process began with counsel on or about March 28, 2025 and which was filed and confirmed as patent pending on or about May 19, 2025; he later discovered the Patent was not filed correctly and ultimately the application was not pursued. He claims no ownership interest in the Family Software. PAN's counsel identifies the "Self-Correcting AI Workflow Generation System" as one of the projects PAN claims, and PAN's Demand seeks ownership of it. Patricia Ringer has never executed any written instrument transferring her rights in the Family Software to PAN or to anyone else.

16. On November 28, 2024, before any dispute with PAN arose, Patricia Ringer, as sole owner, and Mr. Ringer entered into a written Non-Exclusive, Non-Commercial Software License Agreement for the Family Software. The license is limited, non-exclusive, non-transferable, non-sublicensable, and revocable, and permits Mr. Ringer to use the Family Software solely for personal, non-commercial purposes. It expressly prohibits using the Family Software for any employer or commercial purpose, making it available to any employer, and representing it as a

"work made for hire." Mr. Ringer therefore holds no ownership interest in the Family Software and had no right to transfer any interest in it, to PAN or anyone else. PAN nonetheless contends, in connection with this dispute, that it owns or has rights in the Family Software.

17. PAN knew of Mr. Ringer's outside tools and promoted them internally. In March 2024 a PAN Cortex director published an internal page presenting SecurED and SaaS-Squash, hosted on Mr. Ringer's TechRinger GitHub account, as tools "valid to run events." In November 2024 Mr. Ringer presented an early proof of concept of his AI framework internally, including at a Platform Architect meeting at PAN headquarters and at PAN's "TurkeyCon," an event for employees' outside projects. In December 2024 he demonstrated it to PAN leadership, stating that it was developed on his own time and equipment. He later demonstrated it, on his personal laptop, to Unit 42 Chief Technology Officer Michael Sikorski and Unit 42 product manager Nelson Lee. Both knew that the work was outside Mr. Ringer's job duties and performed outside his work hours, that it ran on his personal laptop, and that PAN did not have the source code. On April 2, 2025, he submitted an invention disclosure to PAN.

18. At PAN's request, Mr. Ringer demonstrated the framework at the RSA Conference in April 2025, at the Canopy Hotel, on his own laptop, while making clear it was his own work and not a Unit 42 product. PAN never received the source code for the demonstration. The Canopy Hotel demonstration and the related public materials showed only selected outputs, log excerpts, workflow concepts, screenshots, and the AutoPWN9000 emblem. They did not disclose the source code, internal engine logic, architecture, configuration, credentials, private tenants or cloud accounts, or the implementation details of the Family Software. In early 2025, Mr. Ringer also met with the Chief Technology Officer and Vice President of Software

Engineering of PAN's Unit 42 to discuss whether PAN might build its own version of the framework, and discussed the framework with them for that purpose. No agreement was reached before PAN terminated him.

19. On May 20, 2025, during PAN's quarterly earnings call with investors, and in public statements the same day, PAN attributed the AI attack framework to its Unit 42 team. PAN repeated that attribution in a national television interview on May 27, 2025, in testimony by Unit 42 leadership before the United States Senate, in a blog post by a Unit 42 executive, and in other public communications. Unit 42 also used diagrams that Mr. Ringer created with his personally licensed design software in its presentations. Plaintiffs allege the testimony before the United States Senate and the filing of PAN's arbitration demand solely as background and chronology; no claim in this action is predicated on that testimony, on the filing of the arbitration demand, or on any other petitioning activity, and Plaintiffs seek no relief based on them. On PAN's fiscal 2025 third-quarter earnings call, Mr. Arora personally told investors that "our Unit 42 team was able to simulate an entire ransomware attack in under 25 minutes using AI at every stage of the attack chain." PAN knew, from its own personnel, that Mr. Ringer had performed the work it publicly attributed to its Unit 42 team. Mr. Arora repeated the Unit 42 attribution in national television appearances, including on CNBC and Mad Money.

20. Mr. Ringer raised the misattribution with his manager, PAN's Ethics team, and PAN's intellectual-property counsel beginning on or about May 23, 2025, and with PAN's Chief Executive Officer on July 1, 2025. PAN terminated his employment on July 2, 2025, citing his claim to own the intellectual property at issue. In his July 1, 2025 email to Mr. Arora, Mr. Ringer told him directly that "public statements — including those made under your name in earnings calls and external media — credited the invention to internal teams, without acknowledgment of my

contribution," and that he had consented to PAN's use of his log output only on the explicit understanding that he would receive recognition and attribution as the originator. He also notified Mr. Arora that he intended to issue a professional, fact-based public statement asserting authorship and clarifying the origin of the work. Mr. Arora did not correct the attribution. PAN terminated Mr. Ringer the next day. The termination is alleged in this action solely as chronology, and Plaintiffs seek no relief in this action for the termination or for any harm arising from it.

### C. **PAN's Demand and the Arbitration**

21. On August 11, 2025, PAN filed a Demand for Arbitration with JAMS (Ref. No. 5330000327). PAN's First Cause of Action seeks a declaration that PAN owns copyrights and patent rights in the Works. Paragraph 2 of PAN's prayer seeks an order "compelling Ringer to assign to PAN all rights, title, and interest in any patent applications, patents, copyrights, and other intellectual property rights" in the Works.

22. On September 16, 2025, Mr. Ringer filed an Answering Statement and Counterclaims objecting to arbitration of PAN's ownership claims. Because the Federal Arbitration Act provides no standalone mechanism for a respondent resisting a self-executing arbitral demand to initiate preemptive judicial review absent a motion to compel or an imminent threat of an unauthorized award, Mr. Ringer raised his threshold jurisdictional objections first with the arbitral tribunal in an effort to avoid unnecessary federal litigation. He has continuously maintained and preserved that objection throughout the proceeding, including in his Motion to Set Aside the Arbitration Agreement filed March 2, 2026, his Reply filed March 30, 2026, and his written reservation to the arbitrator dated July 17, 2026, which expressly preserved his objection to arbitrability and his right to raise the gateway question before a court of competent jurisdiction.

23. Arbitrator Gary Fowler was appointed on September 11, 2025. After a

period of delay, he recused on April 1, 2026 without having ruled on the arbitrability briefing then pending before him. Arbitrator Shirish Gupta was appointed on April 15, 2026.

24. On June 11, 2026, the arbitrator issued Order No. 2, which denied Mr. Ringer's Motion to Set Aside the Arbitration Agreement and found PAN's claims arbitrable as between PAN and Mr. Ringer. Order No. 2 did not address whether the arbitrator may determine ownership rights held by persons who are not parties to the Arbitration Agreement, did not address the Agreement's exclusion of disputes that an Act of Congress places outside predispute arbitration, and did not address 28 U.S.C. § 1338(a). Mr. Ringer reserves all rights to seek vacatur of any award.

25. In July 2026, the arbitrator issued Order No. 4 and Order No. 5 requiring Mr. Ringer to produce a provisional patent application and related materials. Mr. Ringer advised the arbitrator, in letters dated July 22, July 29, and July 30, 2026, that the provisional application (No. 63/808,296) was filed in connection with a concept originated by family members who are its rightful creators, that Mr. Ringer is not its inventor, that it has lapsed by operation of law, that it does not cover the works PAN calls the Products, and that the underlying materials are not in his possession, custody, or control. The arbitrator has nonetheless continued to require production of materials concerning the Family Software. Those materials are Patricia Ringer's property. She is not a party to the arbitration, received no notice and no opportunity to be heard, and keeps those materials at her own residence, hundreds of miles from Mr. Ringer. Mr. Ringer does not have possession, custody, or control of them; he holds only his personal, non-commercial license copy. He therefore cannot produce Patricia Ringer's materials, which are not his to give.

26. PAN continues to pursue in the arbitration a determination that it owns the Works. No evidentiary hearing on the merits has taken place, no final or interim

award has been issued, and PAN has suffered no prejudice from Plaintiffs' good-faith efforts to resolve the jurisdictional boundary and pursue mediation before seeking judicial relief.

D. **PAN's Post-Termination Use of the Works and Access to Mr. Ringer's Systems**

27. After July 2, 2025, PAN reproduced, displayed, and distributed copies of the Works, including Mr. Ringer's diagrams and demonstration materials, in presentations, marketing materials, and public communications attributing them to PAN's Unit 42. Those copies included Mr. Ringer's own diagrams, demonstration video, and log output, reproduced without alteration other than the removal of his name and the TechRinger attribution. In the alternative, PAN distributed modified versions of those materials that reproduced their protected expression with his name and the TechRinger attribution removed and with Unit 42 identified as their source.

28. As created and published by Mr. Ringer, the Open-Source Projects carried copyright management information, including their names and the AutoPWN9000 logo, the TechRinger attribution on their GitHub repositories, Mr. Ringer's name in his presentations, videos, and posts, and the license notices and terms under which they and their third-party components were released.

29. Any permission Mr. Ringer gave PAN during his employment was limited to internal use of log output and assistance with specific internal marketing efforts, did not extend to the uses described in paragraph 27, and ended no later than his termination. Patricia Ringer never gave PAN any permission.

30. During Mr. Ringer's employment, PAN-managed software and integrations, including a PAN XSOAR engine integration, were connected to his personal systems and cloud accounts, where his Works were developed and stored. After terminating him on July 2, 2025, PAN removed his access to the PAN tenant

that controlled those integrations but did not remove or deactivate them, leaving the PAN XSOAR engine and other integrations connected to his personal systems and accounts and leaving PAN with continued access to them.

31. On July 9, 2025, after his termination, Mr. Ringer sent a written demand, copied to Mr. Arora and to PAN's legal and human-resources contacts, that all attempts to access his non-PAN resources stop immediately, including integrations with instances in his cloud accounts and tenants. PAN's counsel responded that PAN "likely disputes" his description of those resources and did not confirm that access had ended. On July 30, 2025, Mr. Ringer's counsel sent PAN a written demand to preserve all documents, devices, recordings, and electronically stored information relating to Mr. Ringer, his termination, and his intellectual property.

E. **Patricia Ringer's Trade Secrets**

32. The non-public source code and implementation of the Family Software (the "Trade Secrets"), which Patricia Ringer owns, derive independent economic value, actual or potential, from not being generally known to, or readily ascertainable by, others who could obtain value from them. The Trade Secrets do not include the Open-Source Projects or anything else that has been published.

33. Patricia Ringer took reasonable measures to keep the Trade Secrets secret, including storing them in private repositories and accounts under their control, limiting access, and disclosing non-public details to PAN only in confidence. Patricia Ringer kept the source code of the Family Software private and never authorized PAN to copy, display, distribute, or commercialize it, or to treat it as the work of PAN or Unit 42. The only right she granted was Mr. Ringer's written license, which is non-exclusive, non-commercial, non-transferable, and for personal use only, and which does not permit employer or commercial use. PAN never received the Family Software's source code, and Mr. Ringer used his own laptop and personal systems for

the relevant demonstrations. In a July 2, 2025 letter, PAN's counsel itself characterized these projects as having been developed "[s]ecretly" and complained that Mr. Ringer "refused to provide the full patent application(s)" to PAN.

34. Mr. Ringer's April 2, 2025 invention disclosure, and his related discussions with PAN's intellectual-property counsel, were made in confidence and with the consent of the Family Software's owner for that limited purpose. PAN therefore acquired any non-public information disclosed in those communications under a duty to maintain its secrecy and limit its use.

35. On information and belief, PAN has used and disclosed the Trade Secrets without consent, including in developing and marketing its own AI products, and acquired additional non-public material through its retained access to Mr. Ringer's systems and accounts after July 2, 2025.

36. On information and belief, after July 2, 2025, PAN, through the integrations it left connected to Mr. Ringer's personal accounts and cloud tenants, intentionally accessed without authorization, or exceeded its authorization to access, facilities through which electronic communication services were provided to Mr. Ringer, and obtained access to his electronic communications while they were in electronic storage.

## V. CLAIMS FOR RELIEF

**Reservation.** Each claim in this Complaint is based on the conduct and commercial activity of PAN and, as to Count Four and the misattribution predicate of Count Fifteen, Mr. Arora—including PAN's unauthorized access to and use of Mr. Ringer's systems and accounts, its acquisition and use of Patricia Ringer's trade secrets, and its distribution of the Works stripped of their copyright management information and attributed to its Unit 42 team to promote PAN's own products and services. No claim is based on, and Plaintiffs seek no relief for, any statement made

in a legislative, judicial, or arbitral proceeding, any petitioning activity, or any exercise of the rights of free speech or petition. Plaintiffs allege such matters, including testimony before the United States Senate and the parties' filings in the JAMS arbitration, solely as background and chronology.

**COUNT ONE**

**Declaratory Judgment: The Arbitrator Lacks Authority to Determine Rights Held by Non-Signatories (28 U.S.C. § 2201) (By Plaintiff Patricia Ringer)**

37. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

38. Arbitration is a matter of consent, and a contract cannot bind a nonparty. Whether a non-signatory is bound by an arbitration agreement is for the Court, not the arbitrator.

39. Patricia Ringer never consented to arbitrate with PAN, received no benefit under PAN's agreements, and is not Mr. Ringer's agent with respect to her contributions. She did not sign the Arbitration Agreement or any other agreement with PAN. She wrote the Family Software herself, in Python, before any dispute arose, and has kept it in her own possession at her residence in California. She has not been named as a party in JAMS Ref. No. 5330000327, has received no notice of it, and has had no opportunity to be heard there. Her only agreements concerning the Family Software are a written non-disclosure agreement and the written, non-commercial license described in paragraph 16, both with Mr. Ringer, neither of which mentions PAN or arbitration. PAN nonetheless asks the arbitrator to declare that it owns the Family Software and to compel its assignment, and the arbitrator has ordered production of her materials. An actual, present controversy therefore exists between Patricia Ringer and PAN.

40. Patricia Ringer seeks a declaration that PAN holds no written transfer of

any right of hers in the Works; that PAN does not own the Family Software, which belongs solely to her; and that no award in JAMS Ref. No. 5330000327 may determine ownership of, or compel the transfer of, her rights in the Family Software.

**COUNT TWO**

**Declaratory Judgment: Ownership of the Works Arises Under the Copyright Act and Is Not Within the Arbitrator's Authority (28 U.S.C. §§ 1338(a), 2201; 17 U.S.C. §§ 101, 201) (By Plaintiffs)**

41. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

42. Copyright in the Open-Source Projects vested in Mr. Ringer as their author. PAN can be treated as their author only if they are works made for hire, that is, works prepared by an employee within the scope of his employment. 17 U.S.C. §§ 101, 201(b). Whether a work falls within the scope of employment is decided under federal law using the common law of agency: whether the work is of the kind the employee was employed to perform, whether it occurred substantially within the authorized time and space limits, and whether it was actuated, at least in part, by a purpose to serve the employer. There is no presumption that a work was created within the scope of employment. Mr. Ringer was employed to sell and demonstrate PAN's products, not to write software; he created the Open-Source Projects on his own time, on his own equipment, and released them to the public under open-source licenses rather than for PAN; PAN never had the source code; and he allowed PAN to use log output from his framework only on the express understanding, which he confirmed in writing to PAN's Chief Executive Officer on July 1, 2025, that he would receive recognition and attribution as its originator. A dispute that turns on whether software was created independently or as a work made for hire arises under the Copyright Act. That question, and inventorship and transfer under 17 U.S.C. §

204(a) and 35 U.S.C. § 261, arise under the Copyright Act and the Patent Act, over which 28 U.S.C. § 1338(a) vests jurisdiction in this Court. The Copyright Act independently supports jurisdiction over Plaintiffs' ownership claims; the Patent Act grounds are pleaded in addition and in the alternative, and the Court's jurisdiction does not depend on them. The facts confirm as much. He demonstrated AutoPWN9000 on his personal laptop, during a break; no PAN employee helped develop, improve, or test it; he never developed, improved, or tested it during working hours; and it was on his own systems, not PAN's. When Michael Sikorski and Nelson Lee approved his participation at the Canopy Hotel during RSA, they knew he was presenting independently, that he had done the work outside his work hours, that PAN did not have the source code, and that it would run on his own laptop. The video that PAN later used bore the AutoPWN9000 emblem, and PAN titled the RSA video "Palo Alto U42 Agentic AI demo, RSA," even though Mr. Ringer was the person who prepared and demonstrated the framework artifacts.

43. PAN's ownership claims fall outside the arbitrator's authority on two independent grounds. First, and foremost, ownership of the copyrights and patents PAN seeks to claim arises under federal law and is committed to the courts: whether the Open-Source Projects are "works made for hire" and who owns them is determined under the Copyright Act (17 U.S.C. §§ 101, 201, 204), and inventorship and patent ownership are determined under federal patent law (35 U.S.C. §§ 116, 256, 261), all within the subject matter that 28 U.S.C. § 1338(a) commits to the federal courts. The Arbitration Agreement excludes from its coverage disputes that may not be subject to a predispute arbitration agreement as provided by an Act of Congress, and requires the arbitrator to "follow applicable law"; these federal statutory ownership and inventorship questions are therefore excluded by the Agreement's own terms. Second, and independently, under the Federal Arbitration

Act arbitration is strictly a matter of contract, and the Arbitration Agreement reaches only disputes arising out of or relating to Mr. Ringer's employment. PAN's ownership claims do not arise out of or relate to that employment: Mr. Ringer was employed in sales, and when he asked his manager on or about March 22, 2024 for funding and time to pursue AI security research and development, PAN expressly declined because he was in sales and told him he could pursue it on his own. Work that PAN refused to fund, assign, or treat as part of his job—and whose ownership turns on federal statutory defaults rather than any obligation of his sales employment contract—does not arise out of or relate to that employment merely because an employment relationship existed.

44. Plaintiffs seek a declaration that PAN's First Cause of Action, paragraph 2 of PAN's prayer, and any claim seeking a determination of ownership of, or compelled assignment of rights in, the Works, are not within the arbitrator's authority.

**COUNT THREE**

**Provisional Relief (By Plaintiffs)**

45. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

46. A federal court may enjoin arbitration of claims a party did not agree to arbitrate.

47. Provisional relief is necessary to preserve the status quo pending this Court's determination. Absent relief, Plaintiffs will suffer irreparable harm through an arbitral determination purporting to transfer title to the Works and through disclosure of non-parties' proprietary materials, and any judgment of this Court would be rendered ineffectual. PAN's Demand seeks a declaration of ownership and an order compelling assignment of all rights in the Works, and the arbitrator has

already ordered production of Patricia Ringer's materials. Once title is adjudicated or non-public materials are disclosed, the harm cannot be undone by damages. The balance of hardships favors Plaintiffs, because the requested relief leaves PAN free to pursue its other claims in arbitration and only preserves this Court's ability to decide ownership. The public interest favors the orderly resolution of federal ownership questions by the court Congress designated and the protection of non-parties from proceedings to which they never consented. Plaintiffs are likely to succeed, or at a minimum have raised serious questions going to the merits, for the reasons pleaded in Counts One, Two, and Five.

48. Plaintiffs seek an injunction barring PAN from obtaining, in the arbitration, any determination of ownership of, or order compelling assignment of rights in, the Works, and any discovery of non-parties' proprietary materials, pending this Court's determination. PAN's remaining claims may proceed in arbitration.

## COUNT FOUR

## False Copyright Management Information and Removal or Alteration of Copyright Management Information, 17 U.S.C. § 1202(a) and (b) (By Plaintiff Robert Ringer Against All Defendants)

49. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

50. Registration is not a prerequisite to a claim under 17 U.S.C. § 1202, which protects copyright management information conveyed in connection with any copyrighted work.

51. PAN intentionally removed or altered copyright management information conveyed in connection with the Ringer Contributions, including Mr. Ringer's name, the TechRinger attribution, the Works' titles, and the license notices and terms under which he released them, and distributed copies knowing that the information had

been removed or altered, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(b), (c). PAN acted with that knowledge. Beginning on or about May 23, 2025, Mr. Ringer told his manager, PAN's Ethics team, and PAN's intellectual-property counsel that PAN was using his work without his name and attributing it to Unit 42, and on July 1, 2025 he told PAN's Chief Executive Officer in writing that he had allowed PAN to use his framework's log output only on the understanding that he would receive recognition and attribution as its originator. PAN continued to distribute the materials without his name and with the Unit 42 attribution after each notice and after his termination. That pattern of conduct shows that PAN knew, or had reasonable grounds to know, that its removal and alteration of the copyright management information would conceal its unauthorized use of the Ringer Contributions and enable others to use them without attribution or compliance with their license terms. The removed or altered CMI appeared not just in source repositories, but in the materials PAN used: the AutoPWN9000 name and emblem appeared in the demonstration, the TechRinger/GitHub attribution identified the source of Mr. Ringer's work, and Mr. Ringer's own name and role appeared in the materials and communications he provided. PAN knew, from its own personnel, that Mr. Ringer had performed the work that it publicly attributed to its Unit 42 team. PAN nevertheless published and repeated the Unit 42 attribution without Mr. Ringer's name.

52. PAN also knowingly provided and distributed false copyright management information, identifying PAN's Unit 42 as the source and author of the Open-Source Projects and copyrighted visual materials in presentations, marketing materials, and public communications, with the intent to induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(a), (c). PAN conveyed that false

information directly on and in connection with unauthorized copies and public displays of the Ringer Contributions—specifically including slide decks, presentation visuals, the RSA demonstration video, and marketing materials that reproduced Mr. Ringer's original diagrams, user-interface visualizations, and demonstration artifacts under a Unit 42 attribution. PAN did so after Mr. Ringer had notified it that he was the author, knowing or having reasonable grounds to know that replacing his name and the TechRinger attribution with Unit 42 would conceal its unauthorized reproduction and distribution of his copyrighted works and induce customers and third parties to copy or use them without complying with his open-source license terms. Mr. Arora personally participated in, authorized, and directed this conduct. He approved and presented the Unit 42 attribution in PAN's earnings call and investor materials and in his own media appearances, and after Mr. Ringer notified him in writing on July 1, 2025 that materials and statements distributed under his name credited the work to internal teams without attribution to Mr. Ringer, Mr. Arora refused to correct or retract the attribution and allowed PAN to continue distributing the misattributed materials. A corporate officer is personally liable for wrongful conduct that he authorizes, directs, or participates in, even when he acts on the corporation's behalf. Mr. Ringer's claim against Mr. Arora is not merely that Mr. Arora spoke, but that he authorized, directed, and caused the ongoing distribution of Mr. Ringer's copyrighted visual works and demonstration materials with Mr. Ringer's copyright management information—his name and the TechRinger attribution—removed and replaced with a Unit 42 attribution, after written notice, knowing that doing so would conceal PAN's unauthorized use of his copyrighted works. 17 U.S.C. § 1202(a), (b). PAN itself has taken the position that Mr. Ringer's work was incorporated into its marketing video, proof-of-concept simulation, and related marketing materials presented and distributed at and after the 2025 RSA

Conference.

53. Mr. Ringer is entitled to actual and/or statutory damages for each violation, temporary and permanent injunctive relief, and attorney's fees and costs. 17 U.S.C. § 1203. Defendants are jointly and severally liable for these violations.

**COUNT FIVE**

**Declaratory Judgment of Authorship and Ownership Under the Copyright Act (28 U.S.C. § 2201; 17 U.S.C. §§ 101, 201, 204) (By Plaintiff Robert Ringer)**

54. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

55. Copyright vests initially in the author of a work. 17 U.S.C. § 201(a). For software, the protectable expression includes the original code, visual interface elements, diagrams, demo video, and explanatory materials created by the author, even where the work also incorporates open-source or third-party components that remain owned by their respective authors.

56. Mr. Ringer authored the Ringer Contributions on his own time, with his own equipment, as part of his ethical-hacking coursework and outside the scope of his employment as a salesperson demonstrating PAN's products. Writing software was not work he was employed to perform, he did not do it within PAN's authorized time and space limits, and he did not do it to serve PAN. He published the Open-Source Projects to the public under open-source licenses, under which anyone, including PAN, may use them only on the license terms and with the attribution those licenses require. The Ringer Contributions are not works made for hire. More specifically, AutoPWN9000 began as a learning artifact in November 2022, before the RSA and Unit 42 materials at issue. Mr. Ringer built it to call other tools, generate tasks, validate results, self-correct, and report recommendations, and he used his own licenses, hosting, hardware, personal laptop, and home sandboxes to run it.

SaaS-Squash was built from the Excel C2/GC2-sheet open-source repository as a learning opportunity to learn Go, and Mr. Ringer contributed his own name, logo concept, integration work, demonstrations, and implementation around it while acknowledging the third-party licenses that PAN would also have to respect. PAN employees may have commented that the work was useful or "cool," but comment, observation, and later marketing use are not authorship.

57. Mr. Ringer seeks a declaration that he is the author and owner of the copyrights in the Ringer Contributions, that they are not works made for hire under 17 U.S.C. § 101, and that PAN holds no ownership interest in any part of the Open-Source Projects. He also seeks a declaration that PAN's use of his materials and log output for an RSA/Unit 42 demonstration, an earnings script, a blog post, investor communications, and customer inquiries did not transfer ownership, did not convert the Ringer Contributions into works made for hire, and did not authorize PAN to identify Unit 42 as the author or source.

**COUNT SIX**

**Violation of the California Comprehensive Computer Data Access and Fraud Act, Penal Code § 502 (By Plaintiff Robert Ringer)**

58. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

59. After July 2, 2025, PAN knowingly and without permission accessed, used, or caused to be accessed Mr. Ringer's computers, computer systems, or networks, or retained the means to do so after permission was revoked.  Specifically, during his employment PAN-managed software, including Cortex XDR endpoint agents and a PAN XSOAR (Demisto) engine, was installed on and connected to Mr. Ringer's personally owned home-lab servers and cloud tenants, including his self-hosted Proxmox environment. After July 2, 2025, PAN revoked Mr. Ringer's own access to

the PAN tenant that controlled those agents and integrations but left them installed, active, and reporting. On July 12, 2025, the XSOAR engine service on Mr. Ringer's home-lab server remained loaded, enabled, and running, as it had been continuously since June 9, 2025, and PAN's XDR agents remained installed on his personal infrastructure, with live integrations to his non-PAN tenants, cloud platforms, and personal email. Those agents and integrations gave PAN continuing visibility into his systems and the independent tools and projects stored there. On July 9, 2025, Mr. Ringer revoked in writing any permission PAN may have had and demanded that all access to his non-PAN resources stop. PAN did not confirm that it had stopped, declined to confirm whether it had collected, used, or deleted any of his data, and instead warned him through counsel not to contact its executives. PAN thereby knowingly and without permission accessed, and took, copied, or made use of data from, Mr. Ringer's computers, computer systems, and computer networks, and knowingly and without permission used or caused to be used his computer services, in violation of Penal Code section 502, subdivisions (c)(1), (c)(2), (c)(3), and (c)(7).

60. Mr. Ringer has suffered damage and loss as a result, including time and expense spent investigating and securing his systems. He seeks compensatory damages, injunctive relief, and attorney's fees. Mr. Ringer is the owner of the affected computers, systems, networks, and data within the meaning of Penal Code section 502, subdivision (e)(1). His damages include the time and expense of identifying the agents and integrations, assessing what was accessed, removing PAN's software, rebuilding and re-securing his systems and accounts, and the loss of the private use of his systems while PAN retained access, in an amount according to proof.

/ / /

/ / /

## COUNT SEVEN

## Intrusion Upon Seclusion (By Plaintiff Robert Ringer)

61. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

62. PAN intentionally intruded into Mr. Ringer's private systems, in which he had a reasonable expectation of privacy and where his Works were developed and stored, in a manner highly offensive to a reasonable person. As a direct result, Mr. Ringer has suffered damage, including loss of privacy, emotional distress, and the time and expense of investigating and securing his systems and accounts, in an amount according to proof. He seeks damages and injunctive relief. Mr. Ringer's home-lab servers, cloud tenants, and personal email are private places, maintained in his home and under his own accounts, that he did not open to the public or to PAN after his employment ended. PAN intruded by keeping its XDR agents and XSOAR engine installed and reporting on those systems after it terminated him, after it removed his own access to the controlling tenant, and after his July 9, 2025 written demand that it stop. A reasonable person would find highly offensive a former employer's continued, unconsented monitoring of his home network and personal accounts while it was simultaneously asserting claims against him.

## COUNT EIGHT

## Misappropriation of Trade Secrets, Defend Trade Secrets Act, 18 U.S.C. § 1836 (By Plaintiff Patricia Ringer)

63. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein. This Count is asserted by Plaintiff Patricia Ringer as the sole owner of the Trade Secrets.

64. The Trade Secrets are trade secrets under 18 U.S.C. § 1839(3), owned exclusively by Patricia Ringer, and related to products and services used in, or

intended for use in, interstate commerce. The protectable Trade Secrets consist of the non-public Python source code, prompt-chaining architecture, self-correction algorithms, and internal engine logic of Patricia Ringer's Family Software, and do not include public blog language, published images, or open-source tools. Every demonstration of the framework by Mr. Ringer—including internal proof-of-concept demonstrations and the RSA Canopy Hotel demonstration—was conducted strictly as a "black-box" output demonstration running locally on Mr. Ringer's personal laptop, displaying only selected high-level outputs, log excerpts, workflow concepts, screenshots, and the AutoPWN9000 emblem. At no time did any demonstration expose the underlying source code, internal engine logic, configuration, credentials, private tenants or cloud accounts, or implementation details of the Family Software, all of which remained strictly secret, and any limited technical disclosures made to PAN's personnel or intellectual-property counsel were made under explicit expectations and duties of confidentiality. Patricia Ringer consented only to Mr. Ringer's limited personal, non-commercial use under his written license, and never consented to PAN's acquisition, commercial use, customer demonstrations, or ownership claims.

65. PAN misappropriated the Trade Secrets by acquiring them through improper means, including unauthorized access to Mr. Ringer's systems, and by using and disclosing them without consent after acquiring them under a duty to maintain their secrecy and limit their use. 18 U.S.C. § 1839(5). PAN knew or had reason to know that the Trade Secrets belonged to someone other than PAN and were subject to restrictions: Mr. Ringer's April 2, 2025 invention disclosure stated that the technology had been disclosed outside PAN under a non-disclosure agreement and that there was another inventor, and he told PAN's intellectual-property counsel that he was representing outside parties and that the technology was not developed by

him. Patricia Ringer authorized Mr. Ringer only to raise the Family Software with PAN, not to transfer or license it, and PAN never obtained a license from her. PAN never received the source code. PAN instead retained access to Mr. Ringer's systems, where his licensed copy was run, after July 2, 2025 and after his demand that the access stop.

66. PAN's misappropriation was willful and malicious. PAN acted with knowledge of Patricia Ringer's rights, after written notice, and while publicly attributing work built on her engine to its own Unit 42 team, and it continued its access to the systems where her licensed copy was run after it was told to stop. PAN first obtained access to any of the material comprising the Trade Secrets no earlier than the November 2024 proof of concept presented at PAN headquarters. Plaintiffs did not discover, and could not reasonably have discovered, PAN's misappropriation until PAN's public attribution of the work to Unit 42 in May 2025. This action is brought within three years after any misappropriation occurred and within three years after its discovery, and the claim is therefore timely under 18 U.S.C. § 1836(d).

67. Plaintiffs are entitled to injunctive relief, damages for actual loss and unjust enrichment or a reasonable royalty, exemplary damages of up to twice the damages awarded, and reasonable attorney's fees. 18 U.S.C. § 1836(b)(3).

**COUNT NINE**

**Misappropriation of Trade Secrets, California Uniform Trade Secrets Act, Civil Code § 3426 et seq. (By Plaintiff Patricia Ringer)**

68. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein. This Count is asserted by Plaintiff Patricia Ringer as the sole owner of the Trade Secrets.

69. The Trade Secrets are trade secrets under Civil Code section 3426.1, subdivision (d), and PAN misappropriated them under section 3426.1, subdivision

(b). The Trade Secrets derive independent economic value from not being generally known, as shown by the interest that third parties expressed in acquiring the technology and by PAN's own claim, in the arbitration, that it owns them. Patricia Ringer took reasonable efforts to maintain their secrecy, including by keeping the source code in her own possession at her residence in California, disclosing it only to family members under written non-disclosure agreements, and permitting Mr. Ringer to use it only under a written, non-commercial, non-transferable license that prohibits making it available to any employer. PAN acquired knowledge of the Trade Secrets through Mr. Ringer's confidential disclosure, which was made subject to those restrictions, and through its retained access to his systems, and used and disclosed them without her express or implied consent. PAN also had independent notice of secrecy and limited permission because Mr. Ringer disclosed that the technology had been disclosed outside PAN under an NDA, identified missing inventors, and told PAN that he was representing outside parties. The written license allowed Mr. Ringer to use the engine; it did not give PAN any license, sublicense, assignment, or ownership interest, and PAN never asked Patricia Ringer for one before using the engine output in Unit 42 materials. PAN first obtained access to any of the material comprising the Trade Secrets no earlier than the November 2024 proof of concept presented at PAN headquarters. Plaintiffs did not discover, and could not reasonably have discovered, PAN's misappropriation until PAN's public attribution of the work to Unit 42 in May 2025. This action is brought within three years after any misappropriation occurred and within three years after its discovery, and the claim is therefore timely under Civil Code section 3426.6.

70. PAN's misappropriation was willful and malicious. Plaintiffs are entitled to injunctive relief, damages for actual loss and unjust enrichment or a reasonable royalty, exemplary damages of up to twice that amount, and attorney's fees.

## COUNT TEN

## Unauthorized Access to Stored Communications, 18 U.S.C. §§ 2701, 2707 (By Plaintiff Robert Ringer)

71. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

72. PAN intentionally accessed without authorization, or intentionally exceeded its authorization to access, facilities through which electronic communication services were provided to Mr. Ringer, and thereby obtained access to his electronic communications while they were in electronic storage. The facilities include Mr. Ringer's personal email service and the cloud tenants and platforms through which his electronic communications were sent, received, and stored, to which PAN's integrations remained connected after July 2, 2025. PAN's authorization, if any, ended when it terminated his employment and revoked his own access to the controlling tenant, and in all events no later than his July 9, 2025 written demand. PAN's access was intentional: it chose to leave the integrations live after removing his access, and it refused to confirm that the access had stopped.

73. Mr. Ringer is entitled to actual damages and PAN's profits, and in no case less than $1,000, punitive damages for willful or intentional violations, equitable relief, and reasonable attorney's fees and costs. 18 U.S.C. § 2707(b), (c).

## COUNT ELEVEN

## Invasion of Privacy, California Constitution, Article I, Section 1 (By Plaintiff Robert Ringer)

74. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

75. Mr. Ringer has a legally protected privacy interest in his personal systems, accounts, and communications, and a reasonable expectation of privacy in them.

PAN's continued access after his termination and after his written demand that it stop was a serious invasion of that interest. His expectation was reasonable: the systems are his own property, located in his home and held under his own accounts, PAN ended his employment and his access to its tenant on July 2, 2025, and he revoked in writing any consent PAN may have had on July 9, 2025. The invasion was serious: PAN maintained endpoint agents and live integrations that gave it continuing visibility into his home network, personal email, and private projects, after he told it to stop and while it was litigating against him, and it has refused to disclose what it accessed, kept, or shared.

76. Mr. Ringer seeks damages and injunctive relief.

**COUNT TWELVE**

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) (By Plaintiff Robert Ringer)**

77. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

78. Mr. Ringer's computers, systems, and cloud accounts are protected computers used in and affecting interstate commerce. 18 U.S.C. § 1030(e)(2).

79. After July 2, 2025, PAN intentionally accessed those protected computers without authorization, or exceeded authorized access, through the integrations it left connected after revoking Mr. Ringer's access to the controlling PAN tenant. 18 U.S.C. § 1030(a)(2)(C), (a)(5). PAN's authorization, if any, to access those computers derived from Mr. Ringer's employment and ended when PAN terminated him on July 2, 2025 and revoked his credentials, and in all events no later than his July 9, 2025 written revocation. After that, PAN's XDR agents and XSOAR engine remained installed and active on his home-lab servers, including an XSOAR engine service that was still running on July 12, 2025, and PAN's integrations remained

connected to his cloud tenants and personal email. Through them PAN intentionally accessed those computers without authorization and thereby obtained information from them, and intentionally caused the transmission of code and commands to them.

80. This conduct caused Mr. Ringer loss aggregating at least $5,000 in value within a one-year period, in an amount according to proof, including the cost of responding to the access, conducting a damage assessment, investigating the access, and rebuilding and replacing affected systems and accounts. The loss also includes the reasonable cost of determining what PAN-controlled agents, integrations, tenants, credentials, and services remained connected after July 2, 2025; isolating or replacing affected accounts; preserving evidence; and rebuilding portions of his home-lab environment so it could be used without PAN's retained visibility.

81. Mr. Ringer is entitled to compensatory damages, injunctive and other equitable relief.

**COUNT THIRTEEN**

**Conversion (By Plaintiffs)**

82. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

83. Plaintiffs own and have the right to possess their respective property, including Mr. Ringer's computer systems, devices, and personal and cloud accounts. PAN has substantially interfered with that property by exercising dominion over it and using it without authorization, and retaining access to Mr. Ringer's systems after his demand to stop, depriving Plaintiffs of its use and control. In addition, and independently, PAN converted Mr. Ringer's physical computer systems, devices, and personal and cloud accounts by keeping its software and integrations installed on and connected to them after his termination and his written demand that it stop, and by exercising control over them without his consent. Plaintiffs have been damaged as a

result. The access, possession, and control theories pleaded in this paragraph rest on PAN's interference with Mr. Ringer's tangible property, systems, and accounts, and do not depend on any rights in the Works. This claim rests on interference with tangible property and unauthorized access, not on the use or disclosure of any trade secret or intangible content, and is not displaced by California Civil Code section 3426.7. Mr. Ringer purchased and owns the servers, devices, and hardware that make up his home lab and holds the accounts and cloud tenants at issue in his own name. PAN's wrongful act consisted of keeping its own software installed on, and its integrations connected to, that property after his termination and after his July 9, 2025 demand, and exercising dominion over it by using it to report to PAN, which he did not consent to.

**COUNT FOURTEEN**

**Declaratory Relief Regarding the License (28 U.S.C. § 2201) (By Plaintiffs)**

84. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

85. An actual controversy exists regarding the parties' rights in the Family Software. Plaintiffs seek a declaration that Patricia Ringer is the sole owner of the Family Software; that Robert Ringer holds only a limited, non-exclusive, non-commercial, non-transferable license to use it; that neither the license nor any agreement conveyed any interest in the Family Software to PAN; and that PAN has no ownership or other right in the Family Software. Plaintiffs do not seek relief for PAN's filing of its arbitration demand; they seek only a declaration of the parties' respective rights. The controversy is real and immediate: PAN's Demand asks for a declaration that it owns the Family Software and for an order compelling its assignment, and the arbitrator has ordered production of materials concerning it, while Patricia Ringer and Mr. Ringer contend that the November 28, 2024 license

conveyed only a personal, non-commercial right to Mr. Ringer and nothing to PAN.

**COUNT FIFTEEN**

**Unfair Competition, California Business & Professions Code § 17200 (By Plaintiffs) (Against Palo Alto Networks, Inc.; the misattribution predicate is also asserted against Nikesh Arora)**

86. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

87. Independent of any claim pending in the arbitration, PAN has engaged in unlawful, unfair, and fraudulent business practices by misattributing the Works to its Unit 42 team in public and investor communications and by accessing and using Mr. Ringer's personal systems and accounts without authorization after his termination, in violation of Business and Professions Code section 17200. PAN's unauthorized access to Mr. Ringer's computers, systems, and accounts after July 2, 2025 is independently unlawful under Penal Code section 502, 18 U.S.C. § 1030, and 18 U.S.C. § 2701, each of which supplies a separate predicate for this claim. This claim does not rest on the contract or competition conduct at issue in the arbitration. The misattribution is fraudulent within the meaning of section 17200 because PAN told investors on an earnings call, and the public in national television appearances and other communications, that its Unit 42 team had created the AI attack framework, when PAN knew from its own personnel that Mr. Ringer had performed that work, and members of the public were likely to be deceived. Plaintiffs suffered economic injury and lost money or property as a result of PAN's conduct—including out-of-pocket costs and time expended investigating, remediating, and re-securing Mr. Ringer's personal systems and accounts, and the deprivation of proprietary software and attribution value—and therefore have standing under Business and Professions Code section 17204. PAN's conduct was unfair because it took the benefit of Mr.

Ringer's and Patricia Ringer's work to support a market-facing Unit 42 narrative while denying the attribution and license limitations on which that use was permitted. The conduct had commercial consequences: PAN used the 25-minute AI-attack narrative in an earnings script, a Unit 42 blog, a high-profile RSA display, and communications with a government customer seeking a demonstration, thereby promoting Unit 42 and PAN's services through work that PAN internally knew traced to Mr. Ringer. This claim arises from PAN's commercial conduct and not from any protected petitioning or public-issue speech. To the extent any statement is implicated, it is commercial speech made by PAN about its own business operations, goods, and services to actual and potential customers and investors, and is therefore exempt from a special motion to strike under Code of Civil Procedure section 425.17(c): PAN is primarily engaged in the business of selling cybersecurity products and services; each statement consisted of representations of fact about PAN's own products, services, and capabilities, made for the purpose of promoting and securing sales; and the intended audience was PAN's actual and potential customers, investors, and persons likely to influence them. This claim is not based on, and seeks no relief for, any statement made in a legislative proceeding or in the JAMS arbitration, which Plaintiffs allege solely as background, and is independently supported by PAN's unauthorized access to Mr. Ringer's systems under Penal Code section 502, 18 U.S.C. section 1030, and 18 U.S.C. section 2701.

88. Plaintiffs are entitled to injunctive relief and to restitution of any money or identifiable property PAN acquired from Plaintiffs. Bus. & Prof. Code, § 17203.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. A declaration that PAN holds no written transfer of Patricia Ringer's rights in the Works, that PAN does not own the Family Software, which

belongs solely to her, and that no arbitral award may determine her rights;

2. A declaration that PAN's claims seeking a determination of ownership of, or compelled assignment of rights in, the Works are not within the arbitrator's authority;
3. A temporary restraining order, preliminary injunction, and permanent injunction barring PAN from obtaining in JAMS Ref. No. 5330000327 any determination of ownership of, or order compelling assignment of rights in, the Works, and any discovery of non-parties' proprietary materials;
4. A declaration that Robert Ringer is the author and owner of the copyrights in the Ringer Contributions, that they are not works made for hire, and that PAN holds no ownership interest in any part of the Open-Source Projects;
5. Against Defendants, jointly and severally, actual damages or, at Mr. Ringer's election, statutory damages under 17 U.S.C. § 1203, and preliminary and permanent injunctive relief under 17 U.S.C. § 1203(b);
6. Compensatory damages, and injunctive relief requiring PAN to remove any software and terminate any access to Mr. Ringer's personal systems, under Penal Code section 502 and for intrusion upon seclusion;
7. On the trade secret claims, injunctive relief, damages for actual loss and unjust enrichment or a reasonable royalty, and exemplary damages, 18 U.S.C. § 1836(b)(3); Civ. Code, §§ 3426.2, 3426.3;
8. On the Stored Communications Act claim, actual damages and profits, statutory damages of no less than $1,000, and punitive damages, 18 U.S.C. § 2707(c);

9. Damages and injunctive relief for invasion of privacy;
10. Attorney's fees and costs under 17 U.S.C. § 1203, 18 U.S.C. §§ 1836(b)(3)(D) and 2707(b)(3), Civil Code section 3426.4, Penal Code section 502, and Business and Professions Code section 17200 et seq.;
11. On the Computer Fraud and Abuse Act claim, compensatory damages and injunctive and other equitable relief, 18 U.S.C. § 1030(g);
12. On the conversion claim, damages in an amount to be proven at trial;
13. A declaration that Patricia Ringer is the sole owner of the Family Software; that Robert Ringer holds only a limited, non-exclusive, non-commercial, non-transferable license to use it; that neither the license nor any agreement conveyed any interest in the Family Software to PAN; and that PAN has no ownership or other right in the Family Software;
14. On the unfair competition claim, injunctive relief and restitution of any money or identifiable property acquired from Plaintiffs, Bus. & Prof. Code, § 17203;
15. Pre-judgment and post-judgment interest as permitted by law;
16. Costs of suit; and
17. Such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: November 19, 2026

HACKLER FLYNN & ASSOCIATES, APC

Maryam Maleki
Attorneys for Plaintiffs
ROBERT RINGER and PATRICIA RINGER